UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMUNICATION PARTNERS
WORLDWIDE, INC.,

                              Plaintiff,

       - against -

MAIN STREET RESOURCES, RAINBOW
CAPITAL, DANIEL LEVINSON,
MARSHALL KIEV, DAVID SCHNEIDER,
and STEVE MARCUS,

                              Defendants.



**OPINION AND ORDER**

04 Civ. 10003 (PKL)

### APPEARANCES

LAW OFFICES OF NATASHA MEYERS, ESQ., PLLC
775 Park Avenue, Suite 1004
Huntington, New York 11743
Natasha Meyers, Esq.

<u>Attorneys for Plaintiff</u>

LEVETT ROCKWOOD P.C.
33 Riverside Avenue
Westport, Connecticut 06880
Andrew B. Nevas, Esq.
Robert Laplaca, Esq.

<u>Attorneys for Defendants Main Street Resources,
Daniel Levinson, Marshall Kiev and David Schneider</u>

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
65 East 55th Street
New York, New York 10022
Kenneth J. Rubenstein, Esq.
Lori Marks-Esterman, Esq.

<u>Attorneys for Defendants Rainbow Capital
and Steve Marcus</u>



**LEISURE, District Judge:**

Plaintiff, Communication Partners Worldwide, Inc. ("CPW"), served as a financial advisor to non-party Classic Tuxedo, Inc. ("Classic Tuxedo"). In that capacity, CPW introduced defendants Main Street Resources ("Main Street") and Rainbow Capital LLC ("Rainbow Capital") to Classic Tuxedo as potential investors. CPW commenced this suit because it claims that Main Street, led by Daniel Levinson, Marshall Kiev and David Schneider (collectively, the "Main Street Defendants"), and Rainbow Capital, led by Steven Marcus (collectively, the "Rainbow Capital Defendants"),[1] took improper advantage of the introduction and caused Classic Tuxedo to terminate its relationship with CPW. CPW asserts two causes of action – tortious interference with its contractual relationship with Classic Tuxedo, and tortious interference with its prospective business relationship with Classic Tuxedo. Both the Main Street Defendants and Rainbow Capital Defendants now petition the Court to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") for failure to state a claim upon which relief can be granted or, in the alternative, for lack of personal jurisdiction pursuant to FRCP 12(b)(2). In addition, the Main Street Defendants seek transfer of the action to the District of Connecticut pursuant to 28 U.S.C. § 1404(a) as an alternative to dismissal. For the reasons below, defendants' motions to dismiss are granted.

## BACKGROUND

By letter agreement dated April 9, 2004, CPW and Classic Tuxedo confirmed the exclusive engagement of CPW to act as financial advisor to Classic Tuxedo for any merger and acquisition work as well as for funding and financing by sources arranged by CPW (the "Agreement"). (See Complaint ("Compl.") ¶ 15.) On June 24, 2004, as part of its effort to

---

[1] The caption lists the Rainbow Capital Defendants as "Rainbow Capital" and "Steve Marcus." It appears that the parties' full names are Rainbow Capital LLC and Steven Marcus.

obtain funding and financing for Classic Tuxedo, CPW met with Steven Marcus of Rainbow Capital in New York. (See Declaration of Phillip Schein dated March 11, 2005 ("Schein Decl.") ¶ 3.) As a result of the meeting, the Main Street Defendants and Rainbow Capital Defendants began to collaborate with the intention of investing in Classic Tuxedo. (Id.) Over the course of the following months, Phillip Schein, President of CPW, corresponded with defendants from CPW's office in New York. (Id. ¶ 4.)

On August 13, 2004, defendants sent CPW a financing proposal, which outlined the basic terms and assumptions of defendants' potential investment in Classic Tuxedo. (Id. ¶ 5, Ex. B; Compl. ¶ 19.) CPW and Classic Tuxedo then formulated a response to the proposal, which they communicated to defendants both verbally and in writing. (See Schein Decl. ¶5; Compl. ¶ 20.) On August 25, 2004, defendants sent CPW a binding letter agreement, which incorporated CPW and Classic Tuxedo's response and set forth the specific terms of defendants' investment. (See Schein Decl. ¶ 6; Compl. ¶ 23.)

In August and September 2004, unbeknownst to CPW, defendants began to communicate directly with Classic Tuxedo in order to convince Classic Tuxedo to request that CPW lower the compensation it was due to receive if defendants proceeded with their investment. (See Schein Decl. ¶ 7; Compl. ¶¶ 25-28.) On September 7, 2004, CPW received a letter of termination from Classic Tuxedo. (See Schein Decl. ¶ 8; Compl. 30.) Moreover, on September 14, 2004, CPW received another letter from Classic Tuxedo seeking to modify the Agreement by reducing the compensation due to CPW. (See Schein Decl. ¶ 9; Compl. ¶ 31.) In addition, at this time, Schein was repeatedly contacted by defendants who attempted to persuade him to accept the proposed reduction in compensation. (See Schein Decl. ¶ 9.)

As a result, CPW filed the instant action for tortious interference on November 8, 2004 in New York Supreme Court. On December 20, 2004, the Rainbow Capital Defendants removed the action to this Court. Defendants now argue that (1) CPW's tortious interference with contract claim should be dismissed because the Agreement is terminable-at-will; (2) CPW's tortious interference with prospective business advantage claim should be dismissed because CPW failed to plead wrongful means; and (3) both claims should be dismissed because the Court cannot properly exercise personal jurisdiction over any defendants. The Court need only address defendants' personal jurisdiction argument because it is dispositive of the instant motion.

## DISCUSSION

### I.  Standard for a Rule 12(b)(2) Motion

When considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, it is well established that "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." Metro. Life, 84 F.3d at 566. Ultimately, personal jurisdiction must be proven by a preponderance of the evidence, either at an evidentiary hearing or at trial. See A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). "But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." Id.; see also Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

4

Furthermore, "[a]bsent a specific grant of jurisdiction, the reach of a federal district court's personal jurisdiction is coterminous with that of the personal jurisdiction of a court of general jurisdiction in the state in which the court sits." Geller Media Mgmt., Inc. v. Beaudreault, 910 F. Supp. 135, 137 (S.D.N.Y. 1996) (Leisure, J.) (citing Fed. R. Civ. P. 4(k)(1)(A)). Thus, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." Metro. Life, 84 F.3d at 567 (quoting Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963) (en banc)). To determine whether it has personal jurisdiction over defendants, the Court must engage in a two-part inquiry. First, it must determine whether there is personal jurisdiction over defendants under New York state law; second, if New York law provides for personal jurisdiction, the Court must determine whether the assertion of jurisdiction comports with the constitutional requirements of due process. Id.

There are two types of jurisdiction that a court may exercise over a defendant: general and specific. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984). In the case of general jurisdiction, plaintiff's claim need not arise out of defendant's contacts with the forum state, but defendant's contacts must be substantial; with specific jurisdiction, however, defendant's contacts need not be as substantial, but plaintiff's claim must arise out of the contacts. These two types of jurisdiction are reflected both in New York's jurisdictional statutes, see N.Y.C.P.L.R. §§ 301-302 (McKinney 2001), and in the jurisprudence interpreting the Due Process limits of jurisdiction, see Helicopteros, 466 U.S. at 414.

Relying on the declaration of its President, Phillip Schein, CPW argues that the Court may exercise specific personal jurisdiction over defendants pursuant to Sections 302(a)(1) and 302(a)(3) of the New York Civil Practice Law and Rules ("CPLR"). (See CPW Memorandum of Law In Opposition To Main Street Defendants' Motion To Dismiss ("CPW Main Street Opp.") at 14-23; CPW Memorandum of Law In Opposition To Rainbow Capital Defendants' Motion To Dismiss ("CPW Rainbow Opp.") at 15-23.) However, defendants contend that none of them has had sufficient contacts with New York to permit the exercise of jurisdiction under Section 302(a)(1) or 302(a)(3), and that even if they have, CPW's claims do not arise out of those contacts. (See Main Street Defendants' Memorandum of Law In Support Of Their Motion To Dismiss ("Main Street Mem.") at 15-23; Rainbow Capital Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss ("Rainbow Capital Mem.") at 15-23.)

## II. Jurisdiction Under CPLR Section 302(a)(1)

Section 302(a)(1) allows a court to exercise specific jurisdiction over a non-domiciliary who, in person or through an agent, "transacts any business within the state." N.Y.C.P.L.R. § 302(a)(1) (McKinney 2001). Thus, jurisdiction is proper under section 302(a)(1) when: (1) the defendant has transacted business in New York; and (2) the cause of action arises out of the subject matter of the transacted business. Id.; Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (citing McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323 (1981)) (requiring "an articulable nexus between the business transacted and the cause of action sued upon"). A non-domiciliary transacts business under section 302(a)(1) when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." Cutco Indus., 806 F.2d at 365 (quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607 (1967)). The following factors

should be considered when determining whether a non-domiciliary has transacted business: (1) whether the defendant has an on-going contractual relationship with a New York corporation; (2) whether the defendant negotiated or executed a contract in New York, and whether the defendant visited New York after executing the contract with the parties; (3) whether there is a choice of law clause in any such contract; and (4) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. See Agency Rent a Car Sys., Inc. v. Grand Rent a Car Corp., 98 F.3d 25, 29 (2d Cir. 1996). Courts look to the totality of the circumstances to determine whether the defendant has engaged in such purposeful activity, and require a "substantial nexus" between the business transacted and the cause of action sued upon. See PDK Labs, Inc. v. Freidlander, 103 F.3d 1105, 1109 (2d Cir. 1997); Agency Rent a Car, 98 F.3d at 29-31; CutCo Indus., 806 F.2d at 365; Cedric Kushner Prods., Ltd. v. Thobela, No. 93 Civ. 4592, 1994 WL 163992, at *2 (S.D.N.Y. Apr. 22, 1994) (Leisure, J.). Indeed, jurisdiction cannot be founded upon "random," "fortuitous," or "attenuated" contacts. SAS Group, Inc. v. Worldwide Inventions, Inc., 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003) (citing CutCo Indus., 806 F.2d at 365); Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985). Notably, New York's provision for specific jurisdiction under Section 302 does not extend as far as the federal Constitution permits. Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GMBH & Co., 150 F. Supp. 2d 566, 572 (S.D.N.Y. 2001).

Even if the "transacts business" requirement is satisfied, jurisdiction under Section 302(a)(1) is not proper unless the cause of action "arises from" the defendant's contacts with the forum state. A cause of action "arises from" a defendant's New York contacts if the contacts are "substantially proximate to the allegedly unlawful acts." Avecmedia, Inc. v. Gottschalk, No. 03

Civ. 7831, 2004 WL 1586411, at *5 (S.D.N.Y. July 14, 2004) (quoting Xedit Corp. v. Harvel Indus. Corp., 456 F. Supp. 725, 729 (S.D.N.Y. 1978)). Thus, the business transacted by the foreign defendant in New York must "bear a substantial relationship to the transaction out of which the instant cause of action arises." McGowan, 52 N.Y.2d at 272, 419 N.E.2d at 323.

### A.   Section 302(a)(1) Jurisdiction Over the Main Street Defendants

CPW argues that the Main Street Defendants are subject to jurisdiction under Section 302(a)(1) because the initial meeting between CPW and Rainbow Capital occurred in New York, the majority of telephone conversations concerning the investment originated in New York, and the Main Street Defendants sent the financing proposal to CPW in New York. (See CPW Main Street Opp. at 19.) The Court finds that these allegations are insufficient to establish that the non-domiciliary Main Street Defendants transacted business in New York. Main Street Resources is a registered trade name of MSR Advisors, Inc., formerly known as Colt Services, Inc., which is a corporation based in Westport, Connecticut. (See Declaration of Daniel A. Levinson dated December 23, 2004 ("Levinson Decl.") ¶ 2.) Moreover, each of the individual Main Street Defendants resides and works in Connecticut. (See Levinson Decl. ¶ 5; Declaration of Marshall Kiev dated December 23, 2004 ("Kiev Decl.") ¶ 2; Declaration of David M. Schneider dated December 23, 2004 ("Schneider Decl.") ¶ 2.) Aside from corresponding with CPW's New York office, CPW is unable to identify any contact that the Main Street Defendants had with New York concerning the Classic Tuxedo investment. More specifically, CPW does not dispute that the individual Main Street Defendants did not participate in any meetings in New York with regard to Main Street's potential investment in Classic Tuxedo. (See generally CPW Main Street Opp.) Although the state's long arm jurisdiction may be invoked even if a defendant never enters New York, see Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 522 N.E.2d

40, 43 (1988), "telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction." Burrows Paper Corp. v. R.G. Eng'g, Inc., 363 F. Supp. 2d 279, 386 (S.D.N.Y. 2005) (quoting Int'l Customs Assocs. v. Ford Motor Co., 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995)); see also Standard Enters., Inc. v. Bag-It, Inc., 673 F. Supp. 1216, 1220 (S.D.N.Y. 1987) ("Interstate telephone contacts do not generally have any great significance in § 302(a)(1) analyses."); Current Textiles Corp. v. Ava Indus., 624 F. Supp. 819, 821 (S.D.N.Y. 1985) ("In general, telephone conversations between litigants inside and outside of the state about the contract at issue will not sustain personal jurisdiction under section 302(a)(1) absent additional evidence that the out of state litigant purposefully availed himself of the privilege of conducting activities in New York State.") (citation omitted).

Other than the correspondence, CPW can point to no other conduct demonstrating that the Main Street Defendants purposefully availed themselves of the privilege of doing business in New York. Plainly, the fact that CPW and Rainbow Capital held an initial meeting in New York does not bolster CPW's argument that the Main Street Defendants transacted business in New York. In fact, CPW's President acknowledges that the Main Street Defendants were not yet involved in the Classic Tuxedo financing at the time of this meeting. (See Schein Decl.¶ 3.) Moreover, the two cases upon which CPW relies are not persuasive. First, Berk v. Theatre Arts of West Virginia, Inc., 157 Misc. 2d 696 (N.Y. Civ. Ct. 1993), is readily distinguishable because defendants there conducted auditions in New York for four days, which the Court found "substantially advanced" the contract negotiations with plaintiff. Id. at 700. Here, as noted above, the Main Street Defendants did not spend any time in New York relating to the Classic Tuxedo proposal. Second, Largotta v. Banner Promotions Inc., 356 F. Supp. 2d 388 (S.D.N.Y.

2005), is inapposite because it concerns the contacts necessary for venue under 28 U.S.C. § 1391, not personal jurisdiction under CPLR § 302(a)(1). Id. at 390. Accordingly, because directing correspondence to New York does not alone constitute transacting business, the Court finds that it cannot properly exercise personal jurisdiction over the Main Street Defendants under Section 302(a)(1).

### B. Section 302(a)(1) Jurisdiction Over the Rainbow Capital Defendants

CPW alleges that the Rainbow Capital Defendants satisfy the "transacts business" prong of Section 302(a)(1) because they met with CPW and Classic Tuxedo in New York, and communicated regularly with CPW in New York concerning the financing for Classic Tuxedo. (See CPW Rainbow Capital Opp. at 18.) Rainbow Capital LLC is organized under the laws of Delaware and maintains its sole office in New Jersey. (See Declaration of Steven E. Marcus dated December 24, 2004 ¶ 2.) Steven Marcus, the sole member of Rainbow Capital, resides and works in New Jersey. (Id. ¶ 4.) CPW describes the gathering in New York as an "initial meeting" that resulted in an "ongoing business relationship" between the Main Street Defendants and the Rainbow Capital Defendants. (Schein Decl. ¶ 3.) "Any contract negotiations which indicate a purposeful invocation of the laws of New York State are transactions of business for the purposes of New York's long arm statute." SAS Group, 245 F. Supp. 2d at 548-49 (citing Premier Lending Servs., Inc. v. J.L.J. Assocs., 924 F. Supp. 13, 15-16 (S.D.N.Y. 1996)). CPW fails to establish that any of the parties at this meeting intended to purposefully invoke New York State law; rather, it appears that the meeting was held in New York because that is where CPW's office is located and that location served the parties' convenience. The purpose of the meeting was to introduce the parties to each other and there is no evidence that any specific contract negotiations occurred. Moreover, "a long line of cases has established that § 302(a)(1) permits

the assertion of jurisdiction over a defendant who has engaged in meetings or precontractual negotiations in New York, so long as those negotiations significantly advance or are essential to the formation of an agreement." Avecmedia, 2004 WL 1586411, at *5 (quoting Goldstein v. CIT Mobile Mgmt. Serv., Inc., No. 84 Civ. 824, 1985 U.S. Dist. LEXIS 22289, at *11 (S.D.N.Y. Feb. 26, 1985)). Here, there is no indication that the meeting in New York involved any contractual negotiations, much less negotiations that significantly advanced or were essential to the formation of a contract. Moreover, the parties did not begin to exchange drafts of a proposed agreement until nearly two months after the meeting. Therefore, this isolated meeting does not constitute transacting business and the Court cannot exercise jurisdiction based upon it.

Furthermore, assuming *arguendo* that the meeting in New York satisfies the "transacts business" requirement of Section 302(a)(1), it does not satisfy the section's "arise from" requirement. CPW alleges that the June meeting in New York marked the beginning of the parties' discussions concerning the Classic Tuxedo financing. However, according to CPW's President, defendants did not begin to tortiously interfere with CPW's relationship with Classic Tuxedo until August.[2] (See Schein Decl. ¶ 7.) Indeed, it would strain credulity for CPW to allege that defendants began their tortious conduct at a meeting organized and attended by CPW, and to which CPW invited certain defendants to meet their purported target, Classic Tuxedo. Thus, even if CPW could demonstrate that the Rainbow Capital Defendants transact business in New York, jurisdiction is not proper under Section 302(a)(1) because the Rainbow Capital

---

[2] The complaint is less precise about the timing of defendants' alleged interference. (See Compl. ¶ 25 ("*On or after June 24, 2004*, unbeknownst to Plaintiff, Defendants began a course of conduct consisting of directly communicating with Classic to request a lower schedule of compensation to Plaintiff, which was intended to disrupt Plaintiff's contractual relationship with Classic, and which in fact did disrupt that relationship.") (emphasis added)).

Defendants' contacts with the forum are not "substantially proximate" to the conduct alleged. Avecmedia, 2004 WL 1586411, at *5.

### III.   Jurisdiction Under CPLR Section 302(a)(3)

CPW also argues for personal jurisdiction pursuant to CPLR Section 302(a)(3), which provides in relevant part:

> (a) [A] Court may exercise personal jurisdiction over a non-domiciliary, or his executor or administrator, who in person or through an agent
> (3) commits a tortious act without the state causing injury to person or property within the state, . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

N.Y.C.P.L.R. § 302(a)(3) (McKinney 2001).

To establish jurisdiction under this provision, CPW must make a prima facie showing of the following: (1) defendants committed a tortious act outside of the state; (2) the cause of action arises from that act; (3) the act caused the injury to a person or property within the state; (4) defendants expected or should reasonably have expected the act to have consequences in the state; and (5) defendants derived substantial revenue from interstate or international commerce. See LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214, 735 N.E.2d 883, 886 (2000). New York courts have devoted considerable attention to the third element, causing injury within the state, as they have attempted to fashion a clear test for locating the place of injury. When "determining whether the injury in New York is sufficient to warrant § 302(a)(3) jurisdiction [courts] must generally apply a situs-of-injury test, which asks them to locate the 'original event' which caused the injury." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999); see also Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir.

2001). "The 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." Bank Brussels, 171 F.3d at 791; see also Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990) ("'[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff.'") (quoting Carte v. Parkoff, 152 A.D.2d 615, 616 (App. Div. 1989)). Thus, it is of "paramount importance that the exercise of personal jurisdiction must be based on a direct injury within the state and a close expectation of consequences within the state stemming from the tortious act." Bank Brussels, 171 F.3d at 791 (quotations and citations omitted). Moreover, while the loss of customers in New York will satisfy the local injury requirement, "New York does not become the situs of the injury merely because the plaintiff is a domiciliary or resident of New York." Plastwood Corp. v. Robinson, No. 04 Civ. 3214, 2004 U.S. Dist. LEXIS 17403, at *17 (S.D.N.Y. Aug. 30, 2004) (citing Am. Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428, 433 (2d Cir. 1971)).

CPW's tortious interference claims are founded upon two original events: (1) the Agreement between CPW and Classic Tuxedo, and (2) defendants' inducement of the breach of the Agreement by Classic Tuxedo, which destroyed CPW's relationship with Classic Tuxedo. (See Compl. ¶¶ 34-45.) CPW has failed to establish that either of these events took place in New York. Although CPW is based in New York and thus, it is possible that the Agreement may have sufficient contacts with New York, CPW does not allege or provide any evidence that that is the case. Moreover, given that CPW does not dispute that Classic Tuxedo is a Massachusetts based company, it is equally possible that the parties negotiated and executed the Agreement there. More importantly, there is no allegation that defendants made any effort to induce Classic

13

Tuxedo to breach the Agreement while in New York.[3] Indeed, other than the initial meeting discussed above which involved CPW, Rainbow Capital and Classic Tuxedo, there has been no showing that the Main Street Defendants or the Rainbow Capital Defendants ever met with or directly communicated with Classic Tuxedo in New York. Further, CPW's claim that it has lost Classic Tuxedo as a client provides little support for its jurisdictional argument because Classic Tuxedo is not based in New York. See Barricade Books, Inc. v. Langberg, No. 95 Civ. 8906, 2000 WL 1863764, at *5 (S.D.N.Y. Dec. 19, 2000) ("Courts in the Second Circuit have generally refused to find an injury basis for personal jurisdiction when plaintiffs claim that defendants' torts caused plaintiff to lose out-of-state customers.") (citations omitted.) Based on the present record, therefore, CPW has not sufficiently alleged that defendants' purported interference with Classic Tuxedo caused injury to CPW in New York. As a result, the Court cannot exercise personal jurisdiction over defendants pursuant to Section 302(a)(3).[4]

## CONCLUSION

For the reasons discussed above, the Court cannot exercise personal jurisdiction over defendants. As a result, defendants' motions to dismiss plaintiff's complaint in its entirety pursuant to Rule 12(b)(2) are GRANTED with prejudice. The dismissal is with prejudice because the Court finds that it would be futile to allow CPW to replead. See Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); Oneida Indian Nation of New York v. City of Sherrill, New York, 337 F.3d 139, 168 (2d Cir. 2003).

---

[3] Defendants argue that a breach by Classic Tuxedo is not even possible because the Agreement, by its express terms, was terminable-at-will. (See Main Street Mem. at 5-7; Rainbow Capital Mem. at 7.)

[4] Because the Court finds that the exercise of personal jurisdiction over defendants does not satisfy New York's statutory requirements, it need not address whether it comports with the constitutional guarantee of due process.

**SO ORDERED.**

New York, New York
July 25, 2005

                                              _____
                                                      U.S.D.J.

Copies of this Opinion and Order have been sent to:

Natasha Meyers, Esq.
Law Offices of Natasha Meyers, Esq., PLLC
775 Park Avenue, Suite 1004
Huntington, New York 11743

Andrew B. Nevas, Esq.
Levett Rockwood P.C.
33 Riverside Avenue
Westport, Connecticut 06880

Kenneth J. Rubenstein, Esq.
Olshan Grundman Frome Rosenzweig & Wolosky LLP
65 East 55th Street
New York, New York 10022